IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIE ENGLISH, REMZI JAOS, ) <br> RICARDO LOZA, BRENDA WOODALL, ) <br> BASHIR B. NURUDDIN, TOM HALEY, ) <br> and LEONARD SIMPSON, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SERVICE EMPLOYEES INTERNATIONAL ) <br> UNION, LOCAL 73, and DENISE ) <br> POLOYAC, individually and as former ) <br> Trustee of SEIU, LOCAL 73, ) <br> ) <br> Defendants. ) | No. 18 C 5272 <br><br> Judge Jorge L. Alonso |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Willie English, Remzi Jaos, Ricardo Loza, Brenda Woodall, Bashir B. Nuruddin, Tom Haley, and Leonard Simpson, have filed an amended complaint against their former employer and labor union, Service Employees International Union ("SEIU") Local 73, and Denise Poloyac, formerly one of the trustees in charge of SEIU Local 73. Plaintiffs claim that they were terminated in violation of their rights under their collective bargaining agreement, SEIU's constitution and bylaws, and the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 *et seq*. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted.

**BACKGROUND**

In August 2016, SEIU Local 73, headquartered in Chicago, Illinois, was taken into trusteeship by SEIU, its international parent union. (*See* Am. Compl., Ex. B, SEIU Const. and Bylaws, Art. VIII, Sec. 7, ECF No. 67-1 at 50.) Plaintiffs were all employees—and members—

of Local 73. They were also members of the Service Employees Staff Union ("SESU"), the exclusive collective bargaining representative of Local 73 employees. Some of the plaintiffs held elective office in SESU.

Plaintiffs disagreed with the policies, direction, and management of Local 73 under Poloyac's trusteeship. While the trusteeship was still in place, plaintiffs independently formed a slate of candidates to campaign for election to leadership positions in the next Local 73 election. Jaos began to publicly discuss the campaign, known as "Members Leading Members" ("MLM"), in March 2017. Poloyac threatened to terminate his employment unless he desisted and supported the trusteeship. In June 2017, Jaos was terminated.

In January 2018, the MLM campaign published its slate of candidates, which included plaintiffs, and their positions on a website. Within the month, English, Woodall, Loza, Nuruddin, Haley, and Simpson were all suspended and then terminated. Their termination letters specifically cited their involvement in the MLM campaign as the reason for their termination.

Plaintiffs immediately filed grievances contesting their suspensions and subsequent terminations, but Local 73 denied them. (*See* Am. Compl. ¶ 82.) SESU declined to pursue the grievances in arbitration, except in Simpson's case. However, in July 2018, after Simpson testified against SEIU in another lawsuit, SESU President Trumaine Reeves informed Simpson that it would no longer seek a hearing on his grievance.

Plaintiffs filed this suit in August 2018, asserting claims for violation of their rights under the LMRDA and their collective bargaining agreement. The Court granted defendants' motion to dismiss for failure to state a claim, but gave plaintiffs leave to re-plead the breach of collective bargaining agreement claim. (*See* Sep. 27, 2019 Mem. Op. & Order, ECF No. 56.) Plaintiffs filed the present amended complaint, and defendants have moved to dismiss.

## ANALYSIS

"A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

In their four-count amended complaint, plaintiffs claim that defendants violated their rights under (1) Articles 11 and 12 of the collective bargaining agreement between Local 73 and SESU by terminating plaintiffs without just cause or due process; (2) the SEIU constitution and bylaws by failing to give plaintiffs a full hearing on their grievances or an opportunity to appeal to SEIU's

3

International Executive Board; (3) the Local 73 constitution and bylaws by denying plaintiffs their right to a hearing in accord with the procedures of the SEIU constitution, as well as their right to vote, express opinions, participate in meetings, and otherwise freely exercise the rights guaranteed by the SEIU Constitution; and (4) the LMRDA by terminating plaintiffs even though, at the time the trusteeship was imposed, Jaos was an elected official whose term was not due to expire until after the trusteeship was expected to end and the other plaintiffs (apart from Simpson) were elected officials of SESU.

## I. BREACH OF COLLECTIVE BARGAINING AGREEMENT

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), "provides for federal subject-matter jurisdiction over '[s]uits for violation of contracts between an employer and a labor organization,'" including collective bargaining agreements. *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Local 5*, 724 F.3d 939, 944 (7th Cir. 2013) (quoting 29 U.S.C. § 185(a)). Plaintiffs assert that Local 73 terminated them without just cause and without performing its obligations during the grievance process, in violation of the collective bargaining agreement. As in their earlier motion to dismiss, defendants argue that plaintiffs have not pleaded sufficient facts to permit a reasonable factfinder to conclude that SESU breached its duty to fairly represent plaintiffs, a prerequisite of any union member's claim that his employer breached a collective bargaining agreement. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 914 (7th Cir. 2013) ("When union members sue their employer for breach of contract under section 301 of the LMRA, they must also state a prerequisite claim of breach of their union's duty of fair representation.").

"To balance the power bestowed upon a union to exclusively represent all employees in employment disputes, a concomitant duty of fair representation is owed by the union to each of its members." *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 865 (7th Cir. 2009) (internal quotation

4

marks and alterations omitted). The duty extends not only to collective bargaining with an employer but also to "'enforcement of the resulting collective bargaining agreement,'" *Rupcich v. United Food & Commercial Workers Int'l Union*, 833 F.3d 847, 853 (7th Cir. 2016) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)), including "'provisions for processing grievances,'" *Rupcich*, 833 F.3d at 853 (quoting *NRLB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967)).

Courts afford unions "considerable discretion in dealing with grievance matters," and unions may "consider the interests of all [their] members when deciding whether or not to press the claims of an individual employee." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995) (internal quotation marks omitted). By their nature, unions "represent[] all the employees acting as a unit by majority vote," and "majority rule is an important characteristic" of the "collective action" unions take to benefit their members. *Id.* at 1175-76. Therefore, "[t]he interests of individual employees sometimes may be compromised for the sake of the larger bargaining collective." *Id.* at 1176. "The union may also consider the merits of the case or the effect on the larger collective bargaining unit in making various strategic decisions during the grievance procedure." *Id.* at 1176. "Thus even during an individual grievance procedure, the union's own credibility, its integrity as a bargaining agent and the interests of all its members may be at stake," so "[t]he union is . . . entitled to enjoy a somewhat different perspective than the individual employee it represents in a grievance matter.' *Id.*

But the union's discretion is not unlimited, and it breaches its duty of fair representation "if its actions are (1) arbitrary, (2) discriminatory, or (3) made in bad faith." *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018). "A plaintiff is successful in pleading a breach of the duty of fair representation if he plausibly pleads a breach under *any* of the three prongs," and "each prong must be considered separately" because "[t]he appropriate inquiry under each of these

5

prongs is somewhat different." *Id.* (internal citations and quotation marks omitted). Courts determine whether a union acted arbitrarily by making an "objective inquiry," *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003), that is "highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their . . . responsibilities," *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991). A union's decision is "arbitrary" when it is "so far outside a wide range of reasonableness that it is wholly irrational." *O'Neill*, 499 U.S. at 78 (internal citation and quotation marks omitted). Additionally, the plaintiff must establish not only that the union acted arbitrarily, or "wholly irrational[ly]," *id.*, but also "that the plaintiff was actually harmed by the union's actions," *i.e.*, "that the outcome of the [grievance] would probably have been different but for the union's activities." *Garcia*, 58 F.3d at 1176-77.

Determining whether a union's action is discriminatory or in bad faith, on the other hand, "calls for a subjective inquiry into the union's motives." *Bishop*, 900 F.3d at 398. To prevail on a claim of a bad-faith or discriminatory breach of the duty of fair representation, a union member must show that his "'union acted (or failed to act) due to an improper motive,'" which "can taint a union's decision" that would not otherwise be actionable. *Id.* (quoting *Neal*, 349 F.3d at 369). The claim must "rest on more than a showing that a union's actions treat different groups of employees differently," or even a showing that "the union's otherwise rational decision to compromise" had a "discriminatory impact" on one union member or a small group of members. *Bishop*, 900 F.3d at 398 (emphasis omitted). Improper motives may include "legally prohibited reasons" such as race or sex discrimination, or, "in bad faith cases," a "*sole* motive . . . to punish . . . political opponents"—but "expanding the realm of discriminatory or bad faith actions much beyond these narrow categories" would be contrary to the "broad deference [due] to union leaders in solving intractable problems in distributive justice" under *O'Neill*. *Id.* at 404 (Hamilton, J.,

concurring in the judgment). For example, "[a] union would act in bad faith if . . . it disfavored members who supported a losing candidate for union office." *Cunningham v. Air Line Pilots Ass'n, Int'l*, 769 F.3d 539, 542 (7th Cir. 2014). Further, "'[d]eceptive actions' or 'fraud' can be relevant to whether a union acted in bad faith." *Bishop*, 900 F.3d at 398 (quoting *Yeftich*, 722 F.3d at 916).

But "[d]eclining to pursue a grievance as far as a union member might like isn't by itself a violation of the duty of fair representation." *Yeftich*, 722 F.3d at 916. The union may not "'arbitrarily ignore a meritorious grievance or process it in perfunctory fashion,'" *id.* (quoting *Vaca*, 386 U.S. at 191), but it "'has discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer,'" *Yeftich*, 722 F.3d at 916 (quoting *Neal,* 349 F.3d at 369); *see Coomes v. Republic Airline, Inc.*, No. 19 CV 33, 2019 WL 2436986, at *4 (S.D. Ind. June 11, 2019) (dropping grievance due to "cost considerations" was not arbitrary, discriminatory, or bad faith misconduct).

"At the Rule 12 motion stage, a plaintiff must support an allegation of bad faith with 'subsidiary facts,' not just '[b]are assertions of the state of mind.'" *Bishop*, 900 F.3d at 397 (quoting *Yeftich*, 722 F.3d at 916). "Plaintiffs fail to state a claim of bad faith when their complaint contains nothing but 'conclusory labels,' such as that union officials had acted 'invidiously' or 'intentional[ly], willful[ly], wanton[ly], and malicious[ly].'" *Bishop*, 900 F.3d at 397 (quoting *Yeftich*, 722 F.3d at 916). Such complaints "might pass muster" if they provide "'facts that suggest a motive for the union's alleged' bad-faith conduct." *Bishop*, 900 F.3d at 397 (quoting *Yeftich*, 722 F.3d at 916).

The Court explained in its previous Memorandum Opinion and Order that, in their original complaint, plaintiffs did not meet their pleading burden because their allegations that SESU did not adequately pursue plaintiffs' grievances were merely conclusory, the sort of "sketchy" or

7

"'skeletal allegations'" that are insufficient to take a complaint "'over the line from a possible to a plausible claim of entitlement to relief.'" (Mem. Op. & Order at 10-11 (quoting *Yeftich*, 722 F.3d at 917).) Plaintiffs had pleaded no more than that SESU "declin[ed] to pursue [their] grievance as far as [they] might like," which "isn't by itself a violation of the duty of fair representation." (Mem. Op. & Order at 10 (quoting *Yeftich*, 722 F.3d at 916-17).) *See Bradford v. Local 2209 United Auto Workers*, No. 1:17-CV-463-TLS, 2019 WL 918510, at *4 (N.D. Ind. Feb. 22, 2019) ("The Plaintiff alleges only that the Defendant did not pursue his grievance and did not explain why, but this is not enough to qualify as arbitrary, [*i.e.*,] "so far outside a wide range of reasonableness as to be irrational"; nor does it plead the subjective hostility required to state that the Defendant's actions were discriminatory or in bad faith."). In the present complaint, plaintiffs repeat the same mistake, and again *Yeftich* requires the Court to grant defendants' motion to dismiss.

### A. Whether SESU's actions were arbitrary

In *Yeftich*, the plaintiffs claimed that their employer laid them off and subcontracted their work to nonunion firms, in contravention of the collective bargaining agreement, and that their union failed to act on their grievances. The plaintiffs alleged that an unnamed union official had told them that their grievances were being processed, but according to the plaintiffs, the grievances were actually "diverted or stalled," and no action was taken. 722 F.3d at 914. The Seventh Circuit held that these allegations were not sufficient to state a claim of a breach of the duty of fair representation by way of arbitrary inaction because "factual detail" was "entirely missing." *Id.* at 917. In particular, the complaint lacked details such as the identity of the "union officials [who] told . . . plaintiffs that their grievances were being processed," "when these conversations

occurred," and "how [the plaintiffs] knew" that there had been an "abnormal and arbitrary delay." *Id.*

Similarly here, the Court fails to see "how [the plaintiffs] knew," *i.e.*, what facts indicated to them, that anything "abnormal" took place with regard to their grievances. Plaintiffs have not pleaded facts to suggest that the union did not or could not have rationally ceased to pursue their grievances simply because it concluded that they lacked merit or that plaintiffs could not prevail even if the union did its utmost. *See Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992) ("Under [the] extremely deferential standard [articulated in *O'Neill*, 499 U.S. at 78], courts should not substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call."); *Bradford*, 2019 WL 918510, at *4. Plaintiffs' allegations must be able to support a reasonable inference that their "grievance[s] [would not have been] a flop regardless of the union's role"; that is, they must "allege facts 'plausibly suggesting (not merely consistent with)' a valid grievance.'" *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 471 (7th Cir. 2020); *see also Trnka v. Local Union No. 688, United Auto., Aerospace & Agric. Implement Workers of Am.*, 30 F.3d 60, 61 (7th Cir. 1994) (holding, at summary judgment stage, that "so long as a colorable argument could be made at the time of the union's decision to drop its support that the grievance is meritless (and the union did not then treat substantively similar grievances differently from the plaintiff's), the decision cannot be regarded as arbitrary"). Of course, plaintiffs "need not prove at the pleading stage that [Local 73] wrongly fired" them. *Taha*, 947 F.3d at 471. "But [they] must present a story that holds together, and [their] factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing *Twombly,* 550 U.S. at 570) (other citation and internal quotation and alteration marks omitted).

Plaintiffs have not "allege[d] facts plausibly suggesting (not merely consistent with) a valid grievance," nor do their allegations raise "above the speculative level" the possibility that their grievance would have been sustained because Local 73 "wrongly fired" them. *Taha*, 947 F.3d at 471 (internal quotation marks omitted). First, as the Court previously explained, plaintiffs' terminations did not violate the LMRDA (Mem. Op. & Order at 5-9); Local 73's leadership was entitled to terminate employees whose "'views . . . were not compatible'" with its own "'and thus would interfere with smooth application of the new regime's policy,'" regardless of the fact that those employees were also members of Local 73. (*Id.* at 8 (quoting *Vought v. Wisconsin Teamsters Joint Council No. 39*, 558 F.3d 617, 621 (7th Cir. 2009).)

As for plaintiffs' breach of contract theory, plaintiffs claim that Local 73 terminated them in violation of the collective bargaining agreement based on the agreement's "just cause" provision, which prohibited Local 73 from firing employees without "resorting to progressive discipline" unless they committed "major cause infractions." But plaintiffs do not explain, and the Court fails to see, why it must have been obvious to SESU at the grievance stage that plaintiffs had not committed "major cause infractions," nor is it apparent on the face of the pleadings why Local 73 could not have terminated plaintiffs immediately and without "progressive discipline" for "insubordination" or "activity that undermines . . . members or that willfully undermines members' collective bargaining goals, organizing goals or other programs of Local 73." (*See* Am. Compl., Ex. A, SESU/Local 73 Collective Bargaining Agr., Art. 11, Sec. 1.H, K, ECF No. 67-1 at 14.) Plaintiffs do not meet their burden to plead facts plausibly suggesting—not merely consistent with—the conclusion that they had a valid basis to "challenge their firing" that would not have "flop[ped]" if their union had pursued their grievances further.

10

And the Court reiterates that SESU was not required to conclude that plaintiffs' grievances were unfounded in order to drop them without running afoul of the duty of fair representation; it was within SESU's discretion to decline to pursue the grievances "'in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer.'" *Yeftich*, 722 F.3d at 917 (quoting *Neal*, 349 F.3d at 369). In light of all these factors and the "substantial discretion" that SESU enjoyed, "the complaint's skeletal allegations . . . are not enough to take the plaintiffs' complaint over the line from a 'possible' to a plausible claim of entitlement to relief," *Yeftich*, 722 F.3d at 917, because there were any number of objectively rational bases for SESU to drop the grievances. *See Coomes*, 2019 WL 2436986, at *4. Plaintiffs plead nothing more than that SESU dropped the grievances after Local 73 denied them, which does not carry their burden of pleading facts sufficient to support a plausible inference that dropping the grievances was "wholly irrational" under the circumstances. *O'Neill*, 499 U.S. at 78; *see Yeftich*, 722 F.3d at 917, *Bradford*, 2019 WL 918510, at *4.

### B. Whether SESU's actions were discriminatory or in bad faith

As for bad faith or discrimination, the Court must inquire whether plaintiffs have pleaded that SESU's actions were subjectively, rather than objectively, improper—but even under this "different approach," *Bishop*, 900 F.3d at 398, the result is the same. Plaintiffs do not plead the "subsidiary facts" to support the existence of an improper motive that *Bishop* and *Yeftich* call for; they make only "bare assertions" of plaintiffs' "state of mind." *Id.* at 397; *Yeftich*, 722 F.3d at 916. In arguing otherwise, plaintiffs rely heavily on *Bishop*, arguing that it is indistinguishable from this case. The Court disagrees.

In *Bishop*, the plaintiffs not only pleaded that the union acted in favor of a majority of members to the detriment of a smaller, politically weaker minority; they also pleaded that the union

11

*lied* about its actions, noting that "'[d]eceptive actions' or 'fraud' can be relevant to whether a union acted in bad faith." *Bishop*, 900 F.3d at 398 (quoting *Yeftich*, 722 F.3d at 916). Specifically, in *Bishop*, the plaintiffs were a group of pilot instructors, represented by the same union as the pilots but less numerous than them, who complained about the union's formula for allocating a negotiated retroactive pay settlement, under which pilots would recover 38% of what they were owed but instructors only 15%. The plaintiffs proffered exhibits showing that their union had "lied about having the support of the pilot instructors' union representative when it devised the formula" and that the instructors' union representative had warned them that, while he did not agree with the formula, the instructors should "not . . . complain about the formula lest they risk 'repercussions'" that included losing additional benefits. *Bishop*, 900 F.3d at 395-96, 99.

There are no such allegations here. This case is more similar to *Yeftich* because there are no allegations showing that the union mishandled the issues plaintiffs complain of (here, their grievances) or of "subsidiary facts" suggesting that they had an "improper motive" for handling them in the way that they did. Plaintiffs have not pointed to any lies SESU told or other deceptive conduct that would suggest that SESU was hiding some such motive. *See Chapman v. AFSCME Council 31, Local 3477*, No. 17 C 8125, 2019 WL 214478, at *8 (N.D. Ill. Jan. 16, 2019) (citing *Jones v. Bull Moose Tube Co.*, No. 09 C 3122, 2009 WL 3483804, at *5 (N.D. Ill. Oct. 26, 2009) ("Simply refusing to introduce evidence of other black employees does not allow a reasonable inference of bad faith or discrimination—that would require at least some allegations about *why* this refusal was made.")).

To the extent that plaintiffs have identified any "improper motive," it appears to be that SESU discriminated against them for the same political reasons that they were terminated by Local 73, but plaintiffs' allegations do not meet the plausibility standard because they do not plead that

12

SESU members who made or influenced the decision not to pursue plaintiffs' grievances were also involved in plaintiffs' dispute over the direction of Local 73 and would have had any reason to "punish" plaintiffs for it, *see Bishop*, 900 F.3d at 399, 399 n. 30; *see also id.* at 404 (Hamilton, J., concurring in the judgment). It is true that a union acts in bad faith if it "disfavor[s] members who supported a losing candidate for union office," *Cunningham*, 769 F.3d at 542, but as the Court explained in its previous Memorandum Opinion and Order, plaintiffs have not alleged any internecine dispute within SESU that would have caused SESU members to "disfavor" them; they describe only a dispute over the leadership of Local 73, which is the *employer*, not the union, in the particular posture of this case. *See Taha*, 947 F.3d at 472 (without pleading "causal or even correlative relationship" or other "link" between union's coziness with employer and a challenged union action, plaintiff fails to allege "'more than a sheer possibility' that the union acted unlawfully" (quoting *Iqbal*, 556 U.S. at 678)); *Chapman*, 2019 WL 214478, at *8. Plaintiffs have not pleaded that they represented a politically disadvantaged minority within SESU (as opposed to Local 73) or, more importantly, what "subsidiary facts" support a plausible inference that SESU's inaction on their grievances owed to a desire to "punish" them or discriminate against them for their role in the dispute with Local 73 leadership over the direction of Local 73.[1] Without pleading such facts, they fail to "'nudge[] their claims across the line from conceivable to

---

[1] The closest plaintiffs come is to allege that, after they were terminated, the SESU leadership positions they had occupied were "filled with SESU members that disfavored the Members Leading Members slate." (Am. Compl. ¶ 81.) By itself, however, this allegation does not suffice to meet plaintiffs' pleading burden; merely stating that their positions were filled by people who took the other side in a Local 73 election does not suggest that anyone within SESU did anything untoward with respect to processing or pursuing plaintiffs' grievances. In their brief, plaintiffs render this allegation slightly differently, stating that "SEIU filled SESU positions with SESU members that disfavored" the plaintiffs and their MLM campaign. (Pl.'s Resp. Br. at 5 (citing Am. Compl. 81.) The complaint does not mention "SEIU" in the cited paragraph, and plaintiffs do not explain what they mean by stating that "SEIU" filled SESU leadership positions or how and why the international union, which is not a defendant, became involved in making those appointments. If it means Local 73, the same question remains. The allegation lacks sufficient detail to support a plausible claim that might survive defendants' motion to dismiss.

13

plausible." *Taha*, 947 F.3d at 472 (quoting *Twombly*, 550 U.S. at 570); *Chapman*, 2019 WL 214478, at *8. Defendants' motion to dismiss is granted as to plaintiffs' claim for breach of the collective bargaining agreement for failure to state the prerequisite claim of the union's breach of its duty of fair representation.

## II. SEIU AND LOCAL 73 CONSTITUTIONAL CLAIMS

Defendants argue that the Court should dismiss plaintiffs' claims of violations of the SEIU and Local 73 constitutions because neither constitution confers any rights on plaintiffs as employees rather than as members. Defendants cite *Korzen v. Local Union 705, International Brotherhood of Teamsters*, 75 F.3d 285, 289 (7th Cir. 1996), in which the plaintiffs similarly complained of being fired from local union employment over internal political differences, and the Seventh Circuit affirmed summary judgment for the union, explaining that "[a] union constitution regulates the relation between the union and its members, not the relation between the union and its employees, since even if the union's employees are themselves members of the union, they will be only a tiny fraction of the membership." *Id.*

Plaintiffs respond that "they were still members of SEIU seeking grievances when SEIU improperly terminated them," and defendants should not be permitted to terminate employees, who thereby lose union membership, and then deny them the rights they enjoyed as union members. This argument misses the point and, indeed, reflects the confusion underlying much of plaintiffs' complaint and brief, which repeatedly fail to distinguish between SEIU, Local 73, and SESU, and to account for the different roles each played vis-à-vis the plaintiffs in this case.

In *Korzen*, the Seventh Circuit explained at length that provisions in a union's constitution meant to protect the union's members do not necessarily provide the same protection to the union's employees, given their "different roles" in the organization:

14

> Employees of a union can no more obtain job protection by joining the union that employs them than an employee of a business firm could obtain job protection by buying stock in the firm. Members and employees of an association occupy different roles, and rules for the protection of the occupant of the one role do not carry over to the second even if the same person happens to occupy both. . . . [The plaintiffs] rested on the words of the constitution, overlooking the possibility that its domain is the relation of membership rather than the employment relation. . . . [N]either [the international nor local] constitution is concerned with the relation between the union and its employees. . . . If the union had had a collective bargaining agreement with its employees, as some unions do but Local 705 did not, and if the collective bargaining representative had been the same union, the same local, as was the employer, a nice question would be presented concerning the union's duty to the plaintiffs. For then the union really would be on both sides of the employment relation. That is not our case.

*Id.* at at 289-90. This case is similar. While Local 73 did have a collective bargaining agreement with its employees, unlike the local union in *Korzen*, the agreement did not designate Local 73 as its employees' collective bargaining representative; it designated SESU as the collective bargaining representative of Local 73's employees. Thus, as in *Korzen*, Local 73 is not on "both sides of the employment relation." *Id.* at 290.

Further, as in *Korzen*, plaintiffs have not described, and the Court does not see, anything in any of the constitutional provisions plaintiffs have cited (*see* Am. Compl., Ex. B, SEIU Const. and Bylaws, Art. III, Sec. 2(a), Art. XVII, Secs. 2(b), 6; *id.*, Ex. C, Local 73 Const., Art. III, Sec. 4, Art. XVIII, Secs. 2 & 3) to indicate that either constitution is "concerned with the relation between the union and its employees." *Id.* at 290. These provisions describe rights of expression and participation of union members and certain internal procedures for charging international or local union members or officers with violating the provisions of the union constitutions or other misconduct such as corruption or disloyalty—but these provisions address the rights of union members as union members, not union employees, and "rules for the protection of the occupant of the one role do not carry over to the second even if the same person happens to occupy both." *Id.* at 289.

15

Plaintiffs make no attempt to argue that these provisions "really [are] intended to protect employees as well as members of the union," *id.* at 289; without citing any legal authority, they simply insist that they were members of SEIU and Local 73, and therefore enjoyed the protection provided by their constitutions. As the Court has explained, *Korzen* teaches that this is beside the point. Plaintiffs have sued Local 73 for violating provisions of these constitutions that were designed to protect SEIU and Local 73 members *qua* members, and even if it is true that plaintiffs were indeed SEIU and Local 73 members, they are seeking relief for an action Local 73 took against them as *employees*, in which capacity they were represented by a different entity (SESU) as their collective bargaining representative. Plaintiffs make no response to defendants' argument that the constitutional provisions they cite do not apply to them in this capacity, and plaintiffs are therefore subject to the doctrines of waiver and forfeiture. *Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim."); *Jones v. U.S. Bank Nat. Ass'n*, No. 10 C 0008, 2011 WL 663087, at *2 (N.D. Ill. Feb. 14, 2011) ("[O]nce a motion to dismiss has been filed pursuant to Federal Rule of Civil Procedure 12(b)(6), it becomes the plaintiff's obligation to present legal argument and citations to relevant authority for purposes of substantiating the plaintiff's claims. If the plaintiff fails to respond to legitimate arguments raised by the defendant, the plaintiff's claims may be dismissed.") (internal citation omitted).

Because plaintiffs fail to state a claim against defendants for violating the SEIU or Local 73 constitutions, the Court need not reach defendants' arguments about timeliness or exceeding

the scope of the Court's grant of leave to amend.[2] Defendants' motion to dismiss the claims in Counts II and III is granted.

## III. LMRDA CLAIMS

Plaintiffs caption Count IV as a claim for "Failure to Provide Elected Officials Heightened Protection," but in their brief they admit that this is merely an attempt to replead their LMRDA claim without citing the statute. Plaintiffs recognize that the Court's previous Memorandum Opinion and Order did not grant them leave to replead their LMRDA claim, but they argue that this claim is different from the LMRDA claim contained in their original complaint and that this Court "has not addressed whether elected union officials are entitled to heightened free speech protection" under *Sheet Metal Workers' International Association v. Lynn*, 488 U.S. 347, 355 (1989). (Pl.'s Resp. Br. at 11.) According to plaintiffs, the Court merely ruled that "the Plaintiffs were not elected officials at the time of their terminations and suspensions," but plaintiffs now argue that they have "amended their complaint to allege that they in fact were still elected officials due to the fact that their terminations were not valid and . . . they were still pursuing the grievance process when they were removed from their posts." (*Id.*)

First, the Court fails to see how this differentiates the present LMRDA claim from the former one in any relevant way. The Court did not grant leave to replead an LMRDA claim; it makes no difference that plaintiffs' LMRDA claim is now backed by a slightly tweaked legal theory. This claim is outside the scope of the Court's grant of leave to amend the complaint.

---

[2] The latter argument would have been unavailing, in any case. The Court did not intend to absolutely prohibit plaintiffs from amending the complaint to raise any valid claims they might have against Local 73 other than their claim for breach of the Local 73/SESU collective bargaining agreement; it had simply presumed (apparently correctly, given plaintiffs' failure to state a claim in the amended complaint) that there were no such claims because plaintiffs had not raised them in their original complaint.

17

Even if the Court were to consider this claim, the result would be the same. Plaintiffs still miss the key distinction: while some of the plaintiffs may have been elected officials in *SESU*, these plaintiffs were not elected officials in *Local 73*, the union that fired them. Despite having had two chances to do so, plaintiffs have not shown why the logic of *Lynn*—which held that a union's removal of an elected official from appointed union employment, unlike the removal of an employee who was *not* also an elected official, may violate the official's LMRDA rights— should apply when the union that fired the plaintiffs is not the same union as the union in which they held elected office. The Court was not persuaded by plaintiffs' argument in that regard when it issued its previous Opinion in that case, and it is no more inclined to agree with plaintiffs now.

Plaintiff Jaos's case is slightly different—he was an elected official in Local 73 at one time—but the difference is immaterial because, like the other plaintiffs, he was not an elected official in Local 73 at the time of his dismissal from employment: when the trusteeship was imposed, he and all other "officers" were automatically removed from office. Plaintiffs do not address Jaos's case in their response brief, so any argument as to his particular case would have been waived, even if the claim were within the scope of leave to amend.

As before, plaintiffs are entitled to an opportunity to replead their claims for breach of the Local 73/SESU collective bargaining agreement; although it seems unlikely that plaintiffs can state a claim, the Court cannot say it is "'*certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted.'" *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) (quoting *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n,* 377 F.3d 682, 687 (7th Cir. 2004) (emphasis added in *Tate*)); *cf. Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) ("In applying Rule 15(a), the uncertainty in pleading standards resulting from the Supreme Court's decisions in *Iqbal* and *Twombly* also provides

18

powerful reasons to give parties a reasonable opportunity to cure defects identified by a district court."). Similarly, the Court cannot say it is certain that plaintiffs cannot prevail on the claims for breach of the SEIU and Local 73 Constitutions. *See Korzen*, 75 F.3d at 289 ("They could have introduced evidence that the provision really was intended to protect employees as well as members of the union, but they did not."). But the LMRDA claims are doomed, for the reasons the Court has now twice explained, and the dismissal of those claims is without leave to amend.

## CONCLUSION

For the reasons set forth above, the Court grants defendants' motion to dismiss [73]. Plaintiffs may reassert their claims—apart from their LMRDA claims, which are dismissed without leave to amend—in a second amended complaint by June 3, 2020. The parties are directed to discuss settlement. A status hearing is set for June 10, 2020.

**SO ORDERED.**                              **ENTERED: April 30, 2020**

_____
**HON. JORGE ALONSO**
**United States District Judge**